**CONNECTICUT FUND FOR THE ENVIRONMENT, Plaintiff,**

v.

**ACME ELECTRO–PLATING, INC., Defendant.**

**Civ. No. 5–91–00083 (WWE).**

United States District Court, D. Connecticut.

March 24, 1993.

58

Katharine H. Robinson, Connecticut Fund For The Environment, Hartford, CT, Donald S. Strait, John A. Bernitz, Michael R. Stern, Connecticut Fund For The Environment, New Haven, CT, for plaintiff.

M. Donald Cardwell, Cardwell, Cardwell & Smoragiewicz, Hartford, CT, for defendant.

EGINTON, Senior District Judge.

Plaintiff, Connecticut Fund for the Environment ("CFE"), alleges that defendant, Acme Electro–Plating, Inc. ("Acme"), violated the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251–1387 ("Clean Water Act") by illegally discharging effluents into the Stamford, Connecticut publicly owned treatment works ("POTW") without a permit. Plaintiff moves for partial summary judgment (# 20–1) and asks the court to issue a permanent injunction enjoining defendant from discharging effluents permanently or until it receives a valid permit (# 20–2). For the reasons set forth below, plaintiff's motion for partial summary judgment will be granted.

## FACTS

Acme operates a metal plating plant in Stamford. As part of its operation, it discharges a variety of pollutants into the Stamford POTW. The POTW is a publicly owned treatment works as defined by section 307(b) of the Clean Water Act. The POTW discharges water through a point source into Stamford harbor and Long Island Sound.

CFE is a 2,731 member environmental group whose members use and enjoy the water resources into which the defendant discharges effluents.

On April 20, 1982, the Connecticut Department of Environmental Protection ("DEP") issued to Acme a permit to discharge effluents into the Stamford POTW. The permit expired on April 20, 1987. Acme did not apply for a new permit until May 17, 1989. The normal procedure for permit renewal is to reapply 180 days before expiration, which Acme failed to do. Defendant admits it has continued to discharge effluents without a valid permit since April 20, 1987.

In January, 1988, the DEP instituted an enforcement proceeding against Acme in Connecticut State Court concerning Acme's unpermitted discharges.[1] The DEP sought injunctive relief pursuant to Connecticut General Statute § 22a–430(d) enjoining defendant from further discharging effluents until its permit was renewed.

On March 1, 1988, the DEP and Acme entered into a stipulated judgment in which defendant agreed to (1) pay a civil penalty of $11,000; (2) hire a professional engineer to assist with the permit application; and (3) submit a complete application for a permit to the DEP. On May 17, 1988 Acme applied for a new permit. On July 2, 1992, the DEP Commissioner issued an order denying Acme's application.

On July 17, 1992, the Attorney General's Office, on behalf of the DEP, filed a motion for reconsideration to the Commissioner, requesting a clarification of the order. Acme objected to the motion and requested a hearing. On August 5, 1992, the Commissioner denied Acme's hearing request but granted the motion for reconsideration. Upon reconsideration, the Commissioner stated that in his earlier permit order denying the permit application he was not suggesting that Acme's unpermitted discharging was legal.

Acme appealed the denial of its permit application and the decision to grant the reconsideration motion without a hearing. That appeal is still pending.[2]

On October 19, 1990, plaintiff notified Acme, the Administrator of the Environmental Protection Agency ("EPA"), the Regional Administrator of EPA Region and the Connecticut DEP of defendant's violations and plaintiff's intent to file suit pursuant to 33 U.S.C. § 1365(b). Plaintiff waited the requisite 60 day period for the EPA or the DEP to initiate an enforcement action. Neither the EPA nor the DEP has brought an enforcement action. Accordingly, plaintiff filed this suit alleging, *inter alia*, that defendant has continuously and intermittently discharged effluents into the Stamford POTW without a permit in violation of 33 U.S.C. §§ 1317(d) and 1342, and Conn.Gen.Stat.Ann. §§ 22a–423, 430(a) (West 1985). Defendant admits that it has been continuously discharging effluents without a permit since the original permit expired on April 20, 1987.

## DISCUSSION

A court shall grant summary judgment if it determines that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Suburban Propane, Div. of Nat. Distillers & Chemical Corp. v. Proctor Gas, Inc.*, 953 F.2d 780 (2d Cir.1992). The record must be viewed in the light most favorable to the nonmoving party. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). The court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing inferences against the moving party. *Knight v. U.S. Fire Insurance Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987). Summary judgment is appropriate where the factual predicates of each legal question are undisputed. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

### Clean Water Act Violations

██ The purpose of the Clean Water Act is to ensure that the nation's waters are not

---

1. *Leslie Carothers, Comm'r of Envtl. Protection v. Acme Electro Plating, Inc.*, No. 88–0341749 (Conn.Super.Ct. Jan. 1988).

2. *Acme Electro–Plating, Inc. v. Timothy R.E. Keeney, Comm'r of Conn. Dep't of Envtl. Protection*, appeal filed (Conn.Super.Ct. Aug. 17, 1992).

polluted through industrial effluents. Thus, Congress made "unlawful the discharge of any pollutants into the navigable waters except as authorized by the Act." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.*, 484 U.S. 49, 52, 108 S.Ct. 376, 379, 98 L.Ed.2d 306 (1987). The EPA is authorized to issue permits necessary to discharge effluents. 33 U.S.C. § 1342. A state can institute its own permit program, which Connecticut did by enacting Conn.Gen.Stat. § 22a–430. The EPA approved this program in 1981.

The citizen's suit provision of the Clean Water Act allows civilians to bring suit against violators of the Clean Water Act. Section 1365(b) provides that:

No action may be commenced—

(1) under subsection (a)(1) of this section—

(A) prior to sixty days after the plaintiff has given notice of the allege violation (i) to the Administrator, (ii) to the State on which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or

(B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United State, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as of right.

33 U.S.C. § 1365(b).

A citizen is "a person or persons having an interest which is or may be adversely affected." 33 U.S.C. § 1365(g). However, a citizen's right to sue under the Clean Water Act is limited. Section 1319(g)(6) "bars citizens suits where a state agency conducting enforcement proceedings against the defendant has authority to assess civil penalties, regardless of whether the agency has actually assessed such penalties." *Connecticut Coastal Fishermen's Ass'n. v. Remington Arms Co.*, 777 F.Supp. 173, 181 (D.Conn. 1991).

33 U.S.C. 1319(g)(6) provides:

Action taken by the Administrator or the Secretary, as the case may be, under this subsection shall not effect or limit the Administrator's or Secretary's authority to enforce any provision of this chapter, except that any violation—

(i) with respect to which the Administrator or the Secretary has commenced and is diligently prosecuting an action under this subsection (ii) with respect to which a State has commenced and is diligently prosecuting an action under State law comparable to this subsection or (iii) for which the administrator, the Secretary or the State issued a final order not subject to judicial review and the violator has paid a penalty assessed under this subsection, or such comparable State law, as the case may be,

shall not be the subject of a civil penalty action under subsection (d) of the section or section 1321(b) of this title or section 1365 of this title.

Defendant argues that CFE's suit is barred by section 1319(g)(6). In order to invoke section 1319(g)(6) to limit a citizen's suit, it is imperative that a state commence enforcement proceedings. Here, the state has not commenced an enforcement proceeding against Acme since 1988. That proceeding was concluded on March 1, 1989 upon entry of the stipulated judgment. Thus, the scope of the violations addressed by that enforcement action is limited to violations through March 1, 1989, and does not include subsequent violations.

The state has not initiated any additional enforcement actions against Acme subsequent to the 1989 stipulated judgment. Defendant is appealing the Commissioner's decision to deny Acme's permit application. An appeal of a permit application is not an enforcement proceeding. In the case at bar, there is no evidence that the state is conducting any enforcement proceedings against the defendant. Therefore, section 1319 does not bar this action. However, plaintiff must still qualify as eligible to bring suit under 33 U.S.C. § 1365.

*Standing under Section 1365*

Citizens under 33 U.S.C. § 1365(g) are persons who may be adversely affected

by defendant's illegal discharging. The Second Circuit has held that to have standing to sue as a citizen, plaintiff must allege an injury in fact, whether it be aesthetic and environmental well-being injury or an economic injury. *Friends of Earth v. Conrail,* 768 F.2d 57, 61 (1985). Since members of CFE use and enjoy the water resources into which Acme is discharging, this requirement is satisfied.

 A citizen suit may be brought in federal court if the citizens make "a good-faith allegation of continuous or intermittent violations." *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 64, 108 S.Ct. 376, 385, 98 L.Ed.2d 306 (1987). Here, plaintiff alleges and defendant admits that defendant has been discharging continuously without a permit since March, 1989. Thus, CFE has made a good-faith allegation of continuous violations.

CFE fulfilled its notice requirements pursuant to section 1365(b)(1)(A), and the state does not have a current enforcement action pending against the defendant. Accordingly, the court finds that plaintiff has satisfied all the appropriate requirements of the Act and has standing to bring this action pursuant to 33 U.S.C. § 1365.

*Conclusion*

There are no genuine issues of material fact. Defendant admits that it has been discharging without a permit since March 1, 1989. Defendant is aware that such discharges are illegal but continues to discharge in violation of 33 U.S.C. § 1342 and Conn. Gen.Stat. 22a–430(a). Accordingly, the motion for partial summary judgment (# 20–1) is GRANTED. Decision is reserved on the motion for permanent injunctive relief (# 20–2).